**PELTON GRAHAM LLC**
Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **GABRIEL HERNANDEZ ZAMUDIO, BRIAN ALFARO, JULIO ELIAS IBATE PAR, WILSON VALDERRAMA GUIT VASQUEZ, and JOSE ANGEL MIRANDA LOPEZ, Individually and on Behalf of All Others Similarly Situated,** | |
| **Plaintiffs,** | **CLASS & COLLECTIVE ACTION COMPLAINT** |
| -against- | **Jury Trial Demanded** |
| **CARPRO DETAILING INC., PARK PLACE FINE DETAILING INC., PARK PLACE FINE HAND CAR WASH INC., THE DETAIL SHOP NYC INC., and BEATRIZ L. VARGAS, Jointly and Severally,** | |
| **Defendants.** | |

Plaintiffs Gabriel Hernandez Zamudio, Brian Alfaro, Julio Elias Ibate Par, Wilson Valderrama Guit Vasquez and Jose Angel Miranda Lopez (collectively, the "Plaintiffs"), individually and on behalf of all others similarly situated, as collective and class representatives, upon personal knowledge as to themselves and upon information and belief as to other matters, allege as follows:

1

**NATURE OF THE ACTION**

1.      Plaintiffs worked for Defendants as car wash attendants at Defendants' car wash, located in Queens, New York, and at car dealerships in Rockland County and throughout Long Island with which Defendants had contracted to provide car washing services on both long-term and short-term bases. During their employment with Defendants, Plaintiffs were paid hourly rates that did not include overtime premiums when they worked in excess of forty (40) hours in a given workweek and at times fell below the minimum wage.

2.      Plaintiffs bring this action to recover unpaid overtime premium pay owed to them pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq*. Plaintiffs also bring claims for unpaid minimum wages, unpaid spread of hours premiums, and for failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.* and the supporting regulations.

3.      Plaintiffs bring their FLSA claims on behalf of themselves and all other similarly situated employees of Defendants and their NYLL claims on behalf of themselves and a Federal Rule of Civil Procedure 23 class of all non-management employees working for Defendants during the relevant NYLL limitations period.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337, and 1343, and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.  In addition, the Court has jurisdiction over Plaintiffs' claims under the FLSA pursuant to 29 U.S.C. § 216(b).

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants' business is located in this district and a substantial part of the events or omissions giving rise to

the claims occurred in this district.

6.      This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

7.      On March 20, 2020, New York Governor Andrew M. Cuomo signed Executive Order 202.8 in an effort to stem the spread of COVID-19, which tolls for thirty (30) days "any specific time limit[s] for the commencement, filing, or service of any legal action, notice, motion or other process or proceeding" under any New York State laws or court procedural rules. The thirty (30)-day tolling period began on March 20, 2020 and continued until April 19, 2020. On April 7, 2020, Governor Cuomo signed Executive Order 202.14, which extended the tolling period to May 7, 2020. Subsequently, on May 7, 2020, Governor Cuomo issued Executive Order 202.28, tolling all statutes of limitations for an additional thirty (30) days through June 6, 2020. On June 6, 2020, Governor Cuomo issued Executive Order 202.38, tolling all statutes of limitations until July 6, 2020. On July 7, 2020, Governor Cuomo issued Executive Order 202.48 tolling all statutes of limitations until August 5, 2020. On August 5, 2020, Governor Cuomo issued Executive Order 202.55, which tolled all statutes of limitations until September 4, 2020. On September 4, 2020, Governor Cuomo signed Executive Order 202.60, which extended the tolling period an additional thirty (30) days to October 4, 2020. On October 4, 2020, Governor Cuomo issued Executive Order 202.67, which extended the tolling period to November 3, 2020. In total, the Executive Orders set forth herein provided for a toll of two hundred and twenty-eight (228) days.

## THE PARTIES

**Plaintiffs:**

8.      <u>Plaintiff Gabriel Hernandez Zamudio</u> ("Hernandez") was, at all relevant times, an adult individual residing in Queens County, New York.

3

9.    Plaintiff Brian Alfaro ("Alfaro") was, at all relevant times, an adult individual residing in Queens County, New York.

10.    Plaintiff Julio Elias Ibate Par ("Ibate Par") was, at all relevant times, an adult individual residing in Queens County, New York.

11.    Plaintiff Wilson Valderrama Guit Vasquez ("Guit Vasquez") was, at all relevant times, an adult individual residing in Queens County, New York.

12.    Plaintiff Jose Angel Miranda Lopez ("Miranda Lopez") was, at all relevant times, an adult individual residing in Queens County, New York.

13.    Throughout the relevant time period, Plaintiffs performed work for Defendants at their car wash located at 33-18 60th Street, Queens, New York 11377[1] (the "60th Street Location"), a "Paragon Honda" car dealership located at 33-11 57th Street, Queens, New York 11377 (the "57th Street Location"), the "Paragon Warehouse" car dealership located at 167 Western Hwy N, West Nyack, New York 10994 (the "West Nyack Location"), the "MINI of Freeport" and "BMW of Freeport" car dealership located at 280 W. Sunrise Hwy, Freeport, New York 11520 (the "Freeport Location"), as well as additional car dealerships throughout New York and New Jersey where Defendants provided car wash services from a mobile car wash van.

14.    Plaintiffs consent in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and their consent forms are attached hereto.

**Defendants:**

15.    Carpro Detailing Inc. is a New York corporation doing business as "Park Place Car Wash" with its principal place of business at 33-18 60th Street, Queens, New York 11377 and a service of process address at 33-11 57th Street, Woodside, NY 11377.

---

[1] As the building appears to span the block, this location also has the address 33-13 58th Street, Queens, New York.

16.    According to the New York State Department of State, Division of Corporations, Carpro Detailing Inc. was registered on October 22, 2015.

17.    <u>Park Place Fine Detailing Inc.</u> is a New York corporation doing business as "Park Place Detailing" with its principal place of business at 33-18 60th Street, Queens, New York 11377.

18.    According to the New York State Department of State, Division of Corporations, Park Place Fine Detailing, Inc. was registered on September 18, 2019.

19.    <u>Park Place Fine Hand Car Wash Inc.</u> is a New York corporation doing business as "Park Place Car Wash" with its principal place of business at 33-18 60th Street, Queens, New York 11377 and a service of process address at 280 Sunrise Hwy, Freeport, NY 11520.

20.    According to the New York State Department of State, Division of Corporations, Park Place Fine Hand Car Wash, Inc. was registered on December 1, 2017.

21.    <u>The Detail Shop NYC, Inc.</u> (collectively with Carpro Detailing Inc., Park Place Fine Detailing Inc., and Park Place Fine Hand Car Wash Inc., the "Corporate Defendants") is a New York corporation doing business as "Park Place Car Wash" with its principal place of business at 33-18 60th Street, Queens, New York 11377 and a service of process address at 30-27 82nd Street, East Elmhurst, NY 11370, which, upon information and belief, is Defendant Vargas's address.

22.    According to the New York State Department of State, Division of Corporations, The Detail Shop NYC, Inc. was registered on December 1, 2017.

23.    Upon information and belief, Defendants created certain of the Corporate Defendants for the different locations where Defendants provided services. However, throughout the relevant time period, all Defendants operated as a single integrated enterprise.

24.    At all relevant times, the Corporate Defendants each were and continue to be a

"corporation engaged in commerce" within the meaning of the FLSA.

25.    Upon information and belief, <u>Beatriz L. Vargas</u> ("Vargas" or the "Individual Defendant" and, together with the Corporate Defendants, the "Defendants") is an owner and operator of the Corporate Defendants who is actively involved in the management of the Corporate Defendants, Park Place Car Wash, and the car wash contracts with car dealerships.

26.    According to Defendants' corporate filings with the New York Department of State, Division of Corporations, Defendant Vargas is the Chief Executive Officer of The Detail Shop NYC, Inc.

27.    The Individual Defendant maintained operational control over the Corporate Defendants by overseeing business operations, supervising employees, determining the wages and compensation of employees, establishing the schedule of employees, maintaining employee records, and through hiring and firing employees, including Plaintiffs.

28.    The Individual Defendant participated in the day-to-day operations of the Corporate Defendants and acted intentionally in her direction and control of Plaintiffs and the Defendants' other similarly situated employees and is an "employer" pursuant to the FLSA, 29 U.S.C. § 203(d), 29 C.F.R. § 791.2, as well as the NYLL § 2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendant.

29.    At all relevant times, Defendants have been and continue to be employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

30.    At all relevant times, the Individual Defendant operated the Corporate Defendants as a single enterprise from the 60th Street Location.

31.    At all relevant times, Defendants employed, and/or continue to jointly employ,

Plaintiff and each of the Collective Action members within the meaning of the FLSA.

32.    At all relevant times, Plaintiff, the opt-in plaintiffs, and the Class Members were employed by Defendants within the meaning of the NYLL, §§ 2 and 651.

33.    Upon information and belief, at all relevant times, the Corporate Defendants have had gross revenues in excess of $500,000.00 and have at all times operated as a single enterprise, under the management and control of the Individual Defendant.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

34.    Pursuant to 29 U.S.C. §§ 206, 207 & 216(b), Plaintiffs bring their First Cause of Action as a collective action under the FLSA on behalf of themselves and the following collective:

> All persons employed by any of the Defendants at any time since March 2, 2019, and through the entry of judgment in this case (the "Collective Action Period") who worked as car wash attendants, detailers, and other non-management employees performing car washing and/or detailing (the "Collective Action Members").

35.    A collective action is appropriate in this circumstance because Plaintiffs and the Collective Action Members are similarly situated, in that they were all subjected to Defendants' illegal policies of failing to pay overtime premiums for work performed in excess of forty (40) hours each week.  As a result of these policies, Plaintiffs and the Collective Action Members did not receive overtime premium payments for all hours worked in excess of forty (40) hours per week.

36.    Plaintiffs and the Collective Action Members have substantially similar job duties and are paid pursuant to a similar, if not the same, payment structure.

**FED. R. CIV. P. 23 CLASS ACTION ALLEGATIONS**

37.    Pursuant to the NYLL, Plaintiffs bring their Second through Sixth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following class:

All persons employed by any of the Defendants at any time since July 18, 2015, and through the entry of judgment in this case (the "Class Period") who worked as car wash attendants, detailers, and other non-management employees performing car washing and/or detailing (the "Class Members").

38.    The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendants. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under Fed. R. Civ. P. 23.

39.    The Class Members are so numerous that joinder of all members is impracticable.

40.    Upon information and belief, there are in excess of forty (40) Class Members.

41.    The questions of law and fact common to the Class predominate over any questions solely affecting the individual members of the Class. These common questions include, but are not limited to:

a.    whether Defendants employed Plaintiffs and the Class Members within the meaning of the NYLL;

b.    whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and the Class Members;

c.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members at least minimum wage for all hours worked each workweek;

d.    whether Defendants failed and/or refused to pay Plaintiffs and the Class Members overtime premiums for hours worked in excess of forty (40) hours per workweek;

e.    whether Defendants failed to pay Plaintiffs and the Class Members spread of hours premiums on days when they worked in excess of ten (10) hours;

f.    whether Defendants failed to pay Plaintiffs and the Class Members all

wages owed for work in a given workweek within seven (7) days after the end of the workweek;

g.  whether Defendants failed to provide Plaintiffs and the Class Members with a proper statement of wages with every wage payment as required by the NYLL;

h.  whether Defendants failed to provide proper wage notice to Plaintiffs and Class Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i.  whether Defendants' failure to properly pay Plaintiffs and the Class Members lacked a good faith basis; and

j.  whether Defendants are liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

42.  <u>Plaintiffs' claims are typical of the Class Members' claims</u>. Plaintiffs, like all Class Members, worked for Defendants pursuant to their corporate policies. Plaintiffs, like all Class Members, were, *inter alia*, not paid minimum wage for all hours worked, overtime premium pay for hours worked over forty (40) hours in a given workweek or spread of hours premiums for workdays that exceeded ten (10) hours, were not paid all wages owed within seven (7) days after the end of a given workweek, and were not provided proper wage statements and wage notices. If Defendants are liable to Plaintiffs for the claims enumerated in this Complaint, they are also liable to all Class Members.

43.  <u>Plaintiffs and their Counsel will fairly and adequately represent the Class</u>. There are no conflicts between Plaintiffs and the Class Members, and Plaintiffs bring this lawsuit out of

a desire to help all Class Members, not merely out of a desire to recover their own damages.

44.    Plaintiffs' counsel are experienced class action litigators who are well-prepared to represent the interests of the Class Members.

45.    <u>A class action is superior to other available methods for the fair and efficient adjudication of this litigation</u>.

46.    Defendants are sophisticated parties with substantial resources. The individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

47.    The individual members of the Class have no interest or capacity to bring separate actions; Plaintiffs are unaware of any other litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## **STATEMENT OF FACTS**

**Defendants' Car Wash and Detailing Business**

48.    Upon information and belief, during the relevant time period, Defendants owned, operated and managed the Park Place Car Wash at the 60th Street Location, and provided car washing services pursuant to long-term contracts with at least three (3) car dealerships throughout New York at the 57th Street Location, the West Nyack Location, and the Freeport Location. In addition, Defendants frequently contracted to provide car wash services on a short-term basis with car dealerships throughout New York and New Jersey, for which employees including Plaintiffs drove one of Defendants' two (2) mobile car wash vans and worked in the dealerships' parking lots.

49.    Upon information and belief, and according to Defendants' website at

10

https://www.parkplacedetailing.com/, Defendants have owned, operated and managed Park Place Car Wash since in or around 2007.

50.     Upon information and belief, the 60th Street Location of Park Place Car Wash closed to the public for a few months during 2020 due to the COVID-19 pandemic but continued to perform car washing services pursuant to contracts with car dealerships.

51.     Upon information and belief, Park Place Car Wash is open seven (7) days per week from approximately 8:00 am to 7:00 pm.

52.     Upon information and belief, much of Defendants' business comes from agreements with local car dealerships, but Defendants also provide services to the public, particularly at the 60th Street Location.

53.     Defendants paid employees, including Plaintiffs, from the accounts of different corporate entities without regard to the physical location where they worked, such that some Plaintiffs received checks from several different corporate entities throughout their employment.

54.     Defendants' employees, including Plaintiffs, were frequently transferred among the four (4) locations where Defendants provided car wash services, at Park Place Car Wash and the three (3) car dealerships with which Defendants had long-term car washing contracts, and were required to perform work at other car dealerships in the mobile car-wash van.

55.     Upon information and belief, throughout the relevant time period, the Individual Defendant is primarily present at the 60th Street Location, where she oversees business operations, supervises employees and managers, hires and fires employees, gives employees their wages and job assignments, and takes an active role in ensuring that the and is in daily communication with managers and employees, including Plaintiffs. Upon information and belief, the Individual Defendant also frequently visits the 57th Street Location to oversee employees and communicate

11

with the car dealership management.

56.     Upon information and belief, at all relevant times, the Individual Defendant has had power over payroll and personnel decisions of Park Place Car Wash, including the power to hire and fire employees, set their wages, give job assignments, retain time and/or wage records, and otherwise control the terms and conditions of their employment.

**Plaintiffs' Work for Defendants**

57.     **Plaintiff Gabriel Hernandez** worked for Defendants as a car wash attendant, general car wash employee and driver from in or around October 2014 through in or around the first week of June 2021 (the "Hernandez Employment Period").  From the beginning of the Hernandez Employment Period to in or around March 2015, Plaintiff Hernandez worked at the 57th Street Location. Starting in or around March 2015, Plaintiff Hernandez worked at the 60th Street Location. From in or around September 2020 to in or around May 2021, Plaintiff Hernandez and the crew of employees he worked with were required to work at the West Nyack Location on a daily basis.

58.     Plaintiff Hernandez's car wash duties included washing and scrubbing vehicles, shampooing and vacuuming upholstery, polishing the interior and exterior of cars, cleaning windows and windshields, detailing, waxing, and cleaning tires. Plaintiff Hernandez also performed cleaning, maintenance, organization, and inventory duties inside the car wash, as well as shoveling snow from the premises in the winter. Plaintiff Hernandez also drove a crew of Defendants' employees to the West Nyack Location during the period that they were assigned to that location.

59.     Throughout the Hernandez Employment Period, Plaintiff Hernandez typically worked six (6) days per week, with Sundays off.

60.     From in or around 2014 to in or around 2015, Plaintiff Hernandez worked from approximately 8:30 am to approximately 6:00 pm, for a total of fifty-seven (57) hours per week.

61.     From in or around 2015 to the end of the Hernandez Employment Period, except for the eight (8) month period when he worked at the West Nyack Location, Plaintiff Hernandez typically worked from approximately 9:30 am to approximately 6:00 pm and several times per month was required to work additional time, sometimes arriving at 8:30 am and sometimes staying until 6:30 pm or later. On average, Plaintiff Hernandez worked approximately fifty-two (52) hours per week.

62.     When Plaintiff Hernandez worked at the West Nyack Location, he was required to meet with coworkers at 7:00 am at the 60th Street Location and drive out to the West Nyack Location, where he worked until returning to the 60th Street Location at approximately 7:00 pm. The drive took approximately one (1) hour in each direction, such that he and his co-workers typically arrived at the West Nyack Location at approximately 8:00 am and left at approximately 6:00 pm. During this time, Plaintiff Hernandez worked twelve (12) hours per day, for a total of seventy-two (72) hours per week.

63.     Throughout the Hernandez Employment Period, Plaintiff Hernandez typically took a thirty (30) minute meal break, which he believes was deducted from his pay.

64.     At no time did Defendants provide Plaintiff Hernandez with a reliable means of tracking his hours worked. Plaintiff Hernandez believes that, at the 57th Street and 60th Street Locations, a manager would write down the number of days and possibly the scheduled hours that he and other car wash employees worked per week.

65.     When Plaintiff Hernandez worked at the West Nyack Location, he was required to write a rounded number of hours worked by him and the crew he worked with and send that

information to Defendant Vargas. During this period, Plaintiff Hernandez was instructed to record the start time as the time that they arrived at the West Nyack Location and began washing cars.

66.    Throughout the Hernandez Employment Period, Plaintiff Hernandez was paid at straight-time rates and did not receive overtime premiums consisting of one and one-half (1.5) times his regular effective hourly rate for hours worked in excess of forty (40) per week even though he typically worked in excess of forty (40) hours per week.

67.    From the beginning of the Hernandez Employment Period through 2015, Plaintiff Hernandez was paid a flat daily rate of ninety dollars ($90.00), which did not vary depending upon the number of hours he worked and which did not include overtime premiums.

68.    Beginning in 2016, Plaintiff Hernandez was paid nine dollars ($9.00) per hour. In 2017, Plaintiff Hernandez was paid eleven dollars ($11.00) per hour. In 2018, Plaintiff Hernandez was paid thirteen dollars ($13.00) per hour. From 2019 through the end of the Hernandez Employment Period, Plaintiff Hernandez was paid fifteen dollars ($15.00) per hour.

69.    Beginning in 2016, when Plaintiff Hernandez was paid an hourly rate, he was paid at straight-time rates for all hours worked, including hours worked in excess of forty (40) per week, such that he did not receive overtime premiums.

70.    From the beginning of the Hernandez Employment Period to in or around April 2021, Plaintiff received his wages entirely in cash. During this period, at no time did Plaintiff Hernandez receive a paystub, wage statement or other document setting forth his hourly and overtime rates, total hours worked, and gross and/or net pay.

71.    For approximately the last two (2) months of Plaintiff Hernandez's employment, from April 2021 to June 2021, Plaintiff was paid in a combination of cash and check. During this period, Plaintiff Hernandez typically received a paystub with his payment of wages showing thirty

(30) hours of work per week, which was the amount he received via check. The remainder of his wages he received in cash with no wage statement, paystub or other materials setting forth his true hours worked or wages received.

72.    Throughout the Hernandez Employment Period, Plaintiff Hernandez was typically required to sign two (2) documents in order to receive his pay. The two (2) documents showed approximately his total hours worked, divided among two (2) of the Corporate Defendants, such that Defendants avoided crediting him with working more than forty (40) hours per week. Plaintiff Hernandez was not aware whether he was credited with working for different corporations when he worked at different locations or any other specific manner in which Defendants divided up his hours worked in order to avoid crediting him with overtime hours.

73.    At no time was Plaintiff Hernandez paid spread of hours premiums, consisting of one (1) extra hour's pay at minimum wage, on days when he worked in excess of ten (10) hours per day, which typically occurred when he worked at the West Nyack Location and during summer time.

74.    At no time was Plaintiff Hernandez provided with a wage notice setting forth the contact information of his employer, his regular hourly and overtime rates, his regular payday, any deductions or credits claimed by Defendants, or other information required by NYLL § 195(1)(a).

75.    **Plaintiff Brian Alfaro** worked for Defendants as a car wash attendant and general car wash employee from in or around September 2019 through in or around October 2021(the "Alfaro Employment Period").

76.    Throughout the Alfaro Employment Period, Plaintiff Alfaro worked primarily at the 60th Street Location. Between approximately September 2020 and May 2021, Plaintiff Alfaro worked at the West Nyack Location.

15

77.    Plaintiff Alfaro's duties included washing and scrubbing vehicles, shampooing and vacuuming upholstery, polishing the interior and exterior of cars, cleaning windows and windshields, detailing, waxing, and cleaning tires. Plaintiff Alfaro also performed cleaning, maintenance, organization, and inventory duties inside the car wash, as well as shoveling snow from the premises in the winter.

78.    For the first week of the Alfaro Employment Period, Plaintiff Alfaro worked two (2) days, from approximately 6:00 am to 3:00 pm or 4:00 pm, for a total of approximately nineteen (19) hours. During the second week, Plaintiff Alfaro worked four (4) days, for a total of approximately thirty-eight (38) hours. For the following month, Plaintiff Alfaro worked five (5) days per week, for a total of approximately forty-seven and one-half (47.5) hours per week.

79.    Subsequently, from in or around late October 2019 to in or around March 2020, at the beginning of the COVID-19 pandemic, Plaintiff Alfaro typically was typically scheduled to work six (6) days per week from approximately 9:30 am to approximately 6:00 pm and was often required to work longer, either by arriving at 7:00 am or staying at least thirty (30) minutes late, particularly when the car cash was busy. On average, during this period Plaintiff Alfaro typically worked approximately fifty-four (54) hours per week.

80.    Beginning in or around mid-March 2020, when the COVID-19 pandemic became widespread, to in or around June 2020, Plaintiff Alfaro was often required, one (1) to three (3) days per week and sometimes more frequently, to work from approximately 6:00 am to approximately 9:00 pm. On average, during this period, Plaintiff Alfaro worked between fifty-seven (57) and seventy (70) hours per week.

81.    From in or around June 2020 to September 2020, Plaintiff Alfaro returned to his previous schedule, such that during this period he worked on average fifty-four (54) hours per

week.

82.     From in or around September 2020 to May 2021, when Plaintiff Alfaro worked at the West Nyack Location, he was required to meet with his coworkers at the 60th Street Location at 7:00 am, travel approximately one (1) hour to the West Nyack Location, begin work at 8:00 am and work until 6:00 pm, then drive back to the 60th Street Location, where he arrived at approximately 7:00 pm. During this period, he typically alternated between working six (6) days one week, for a total of seventy-two (72) hours, and seven (7) days the following week, for a total of eighty-four (84) hours per week.  The hours spent traveling to and from the West Nyack Location were not compensated by Defendants.

83.     From in or around May 2021 through October 2021, Plaintiff Alfaro returned to his previous schedule, such that he worked on average fifty-four (54) hours per week.

84.     Throughout the Alfaro Employment Period, Plaintiff Alfaro was allowed to take a thirty (30) minute meal break, which he believes was deducted from his pay.

85.     At no time did Defendants provide Plaintiff Alfaro with a reliable means of tracking his hours worked. When Plaintiff Alfaro worked at the West Nyack Location, Plaintiff Hernandez recorded the hours worked by him and the crew he worked with and sent that information to Defendant Vargas. During this period, Defendants did not compensate or credit Plaintiff Alfaro with the travel time between the 60th Street Location and the West Nyack Location. Plaintiff Alfaro believes that at the 60th Street Location, a manager would write down the number of days and possibly his daily schedule worked each week.

86.     From the beginning of the Alfaro Employment Period to in or around February 2021, Plaintiff Alfaro was paid his wages in cash with no paystub, wage statement or other document setting forth his hourly and overtime rates, total hours worked, and gross and/or net pay.

87.    Beginning in or around February 2021 and until the end of his employment period, Plaintiff Alfaro began to receive his wages in a combination of check and cash. He typically received pay for approximately thirty (30) hours per week by check, which was accompanied by a paystub showing the number of hours paid by check, and the remainder of his hours in cash, with no paystub, wage statement or similar document.

88.    Throughout the Alfaro Employment Period, Plaintiff Alfaro was paid  fifteen dollars ($15.00) per hour for all hours worked, including hours worked in excess of forty (40) hours per week, excluding travel time between the 60th Street Location and the West Nyack Location, for which he did not receive any pay. At no time did Plaintiff Alfaro receive overtime premium pay or spread of hours premiums.

89.    During the period that Plaintiff Alfaro worked at the West Nyack Location, he was not paid for approximately two (2) hours per day, such that during this period his effective hourly rate fell below the minimum wage.

90.    During the period that Plaintiff Alfaro worked at the West Nyack Location, he continued to receive his wages at the 60th Street Location. Upon receipt of his wages, he was required to sign a document that showed his total wages paid per week and frequently showed an approximation of his total hours worked per week divided among two (2) or more of the Corporate Defendants.

91.    At no time was Plaintiff Alfaro provided with a wage notice setting forth the contact information of his employer, his regular hourly and overtime rates, his regular payday, any deductions or credits claimed by Defendants, or other information required by NYLL § 195(1)(a).

92.    **Plaintiff Julio Elias Ibate Par** worked for Defendants as a car wash attendant and general car wash employee from in or around March 2018 through on or about May 26, 2021 (the

"Ibate Par Employment Period").

93.     Throughout his employment, Plaintiff Ibate Par worked primarily at the 60th Street Location. Between approximately September 2020 and the end of the Ibate Par Employment Period, Plaintiff Ibate Par worked at the West Nyack Location. On occasion, he was assigned to work at the Freeport Location in order to cover for absent employees.

94.     Plaintiff Ibate Par's car wash duties included washing and scrubbing vehicles, shampooing and vacuuming upholstery, polishing the interior and exterior of cars, cleaning windows and windshields, detailing, waxing, and cleaning tires. Plaintiff Ibate Par also performed cleaning, maintenance, organization, and inventory duties inside the car wash, as well as shoveling snow from the premises in the winter.

95.     Throughout the Ibate Par Employment Period, Plaintiff Ibate Par typically worked six (6) days per week, with Sundays off.

96.     From the beginning of the Ibate Par Employment Period to in or around March 2020, Plaintiff Ibate Par typically worked from approximately 9:00 or 9:30 am to between 6:00 and 6:30 pm, for a total of fifty-one (51) to fifty-seven (57) hours per week. During the summer, when the car wash was particularly busy, he often worked until 8:00 pm three (3) or more days per week. During the summers, Plaintiff Ibate Par worked between fifty-seven (57) and sixty-two (62) hours per week.

97.     Beginning in or around mid-March 2020, when the COVID-19 pandemic became widespread, to in or around June 2020, Plaintiff Ibate Par was frequently required to work significantly more hours, from approximately 6:00 am to approximately 9:00 pm between one (1) and three (3) days per week. On average, during this period, Plaintiff Ibate Par worked between fifty-seven (57) and seventy (70) hours per week.

98.     From in or around June 2020 to in or around September 2020, Plaintiff Ibate Par returned to his previous schedule and typically worked between fifty-seven (57) and sixty-two (62) hours per week.

99.     From in or around September 2020 to the end of the Ibate Par Employment Period, when Plaintiff Ibate Par worked at the West Nyack Location, he was required to meet with his coworkers at the 60th Street Location at 7:00 am, travel approximately one (1) hour to the West Nyack Location, begin work at 8:00 am and work until 6:00 pm, then drive back to the 60th Street Location, where he arrived at approximately 7:00 pm. In total during this period he typically worked six (6) days per week, for a total of seventy-two (72) hours per week.

100.     Throughout the Ibate Par Employment Period, Plaintiff Ibate Par typically took a thirty (30) minute meal break, which he believes was deducted from his pay.

101.     Throughout the Ibate Par Employment Period, Plaintiff Ibate Par was paid his wages in cash with no paystub, wage statement or other document setting forth his hourly and overtime rates, total hours worked, and gross and/or net pay.

102.     At the beginning of the Ibate Par Employment Period, Plaintiff Ibate Par was paid eleven dollars and fifty cents ($11.50) per hour. In 2019, Plaintiff Ibate Par was paid thirteen dollars and fifty cents ($13.50) per hour. From 2020 through the end of the Ibate Par Employment Period, Plaintiff Ibate Par was paid fifteen dollars ($15.00) per hour.

103.     Throughout the Ibate Par Employment Period, he was paid at straight-time rates for all hours worked, including hours worked in excess of forty (40) per week, such that he did not receive overtime premiums of one and one-half (1.5) times his regular hourly rate.

104.     At no time was Plaintiff Ibate Par paid spread of hours premiums, consisting of one (1) extra hour's pay at minimum wage, on days when he worked in excess of ten (10) hours per

day, which typically occurred when he worked at the West Nyack Location.

105.    During 2018 and 2019, Plaintiff Ibate Par's hourly rate fell below the correct statutory New York minimum wage. In addition, for the period that he worked at West Nyack, Plaintiff Ibate Par was typically not paid for two (2) hours of travel time per day, such that his effective hourly rate fell below the correct statutory New York minimum wage.

106.    When Plaintiff Ibate Par worked at the West Nyack Location, when he received his pay, he was required to sign a document showing his total wages paid and sometimes an approximation of the number of hours he worked, which often showed his hours divided among several of the Corporate Defendants, such that he was not credited with working over forty (40) hours for any single corporation.

107.    At no time was Plaintiff Ibate Par provided with a wage notice setting forth the contact information of his employer, his regular hourly and overtime rates, his regular payday, any deductions or credits claimed by Defendants, or other information required by NYLL § 195(1)(a).

108.    **<u>Plaintiff Wilson Valderrama Guit Vasquez</u>** worked for Defendants as a car wash attendant and general car wash employee from in or around June 2015 through on or about August 21, 2021 (the "Guit Vasquez Employment Period").

109.    From the beginning of the Guit Vasquez Employment Period to in or around 2017, Plaintiff Guit Vasquez worked at the 57th Street Location. Beginning in or around 2017, he worked at the 60th Street Location. From in or around 2019 through the end of the Guit Vasquez Employment Period, Plaintiff Guit Vasquez worked at the Freeport Location. On occasion, Plaintiff Guit Vasquez was assigned by Defendants to work at other locations, typically in connection with Defendants' mobile van car-washing services.

110.    Plaintiff Guit Vasquez's car wash duties included washing and scrubbing vehicles,

shampooing and vacuuming upholstery, polishing the interior and exterior of cars, cleaning windows and windshields, detailing, waxing, and cleaning tires. Plaintiff Guit Vasquez also performed cleaning, maintenance, organization, and inventory duties inside the car wash, as well as shoveling snow from the premises in the winter.

111.    Throughout the Guit Vasquez Employment Period, Plaintiff Guit Vasquez typically worked six (6) days per week, with Sundays off.

112.    From the beginning of the Guit Vasquez Employment Period to in or around 2017, when he worked at 57th Street Location, Plaintiff Guit Vasquez typically worked from approximately 8:30 am to approximately 6:00 pm, for a total of approximately fifty-seven (57) hours per week.

113.    From in or around 2017 to in or around the end of 2018, when he worked at the 60th Street Location, Plaintiff Guit Vasquez typically worked from approximately 9:30 am to approximately 6:00 pm for a total of approximately fifty-one (51) hours per week. Plaintiff Guit Vasquez continued to work the same schedule when he worked at the Freeport Location through the end of the Guit Vasquez Employment Period.

114.    Throughout most of the Guit Vasquez Employment Period, Plaintiff Guit Vasquez typically took a thirty (30) minute meal break, which he believes was deducted from his pay.  On occasion, when he performed car-washing services at a BMW car dealership in Freeport, New York, he was allowed to take a one (1) hour meal break, which was deducted from his payment.

115.    For approximately the first five (5) months of the Guit Vasquez Employment Period, to in or around November 2015, Plaintiff Guit Vasquez was paid his wages in cash with no paystub, wage statement or other document setting forth his hourly and overtime rates, total hours worked, and gross and/or net pay.

116.    From in or around November 2015 through the end of his employment period, Plaintiff Guit Vasquez was paid his wages in a combination of check and cash. Plaintiff Guit Vasquez typically received pay for approximately twenty-five (25) hours per week in check, accompanied by a paystub reflecting the same number, and received the remainder of his wages in cash.

117.    From the beginning of the Guit Vasquez Employment Period to the end of 2015, Plaintiff Guit Vasquez was paid eight dollars and seventy-five cents ($8.75) per hour. In 2016, Plaintiff Guit Vasquez was paid nine dollars ($9.00) per hour. In 2017, Plaintiff Guit Vasquez was paid ten dollars and fifty-cents ($10.50) per hour. In 2018, Plaintiff Guit Vasquez was paid twelve dollars ($12.00) per hour. When Plaintiff was transferred to the Freeport Location, in or around 2019, he was paid twelve dollars ($12.00) per hour.  In or around 2020, Plaintiff Guit Vasquez was paid thirteen dollars ($13.00) per hour. In or around 2021 through the end of the Guit Vasquez Employment Period, Plaintiff Guit Vasquez was paid fourteen dollars ($14.00) per hour.

118.    Throughout the Guit Vasquez Employment Period, Plaintiff Guit Vasquez received his paystubs from different Corporate Defendants. In 2017, he typically received his paystubs from Defendant Carpro Detailing, Inc. During 2018, he typically received paystubs from Defendant The Detail Shop NYC, Inc. During 2019 and 2020, he typically received paystubs from Defendant Park Place Fine Hand Car Wash, Inc. When Plaintiff Guit Vasquez was paid his wages, he was required to sign a document showing his total wages paid.

119.    Throughout the Guit Vasquez Employment Period, Plaintiff Guit Vasquez was paid at straight-time rates for all hours worked, including hours worked in excess of forty (40) per week, such that he did not receive overtime premiums of one and one-half (1.5) times his regular hourly rate.

23

120.    From 2017 through the end of the Guit Vasquez Employment Period, Plaintiff Guit Vasquez's hourly rate fell below the correct statutory New York minimum wage rate.

121.    At no time was Plaintiff Guit Vasquez provided with a wage notice setting forth the contact information of his employer, his regular hourly and overtime rates, his regular payday, any deductions or credits claimed by Defendants, or other information required by NYLL § 195(1)(a).

122.    When Plaintiff Guit Vasquez began working for Defendants, he was instructed by Defendant Vargas to sign certain documents that were provided in English, which he does not speak or read, and were never explained to him. Defendant Vargas did not explain the content but simply said that she was helping him fill out the application forms.

123.    **Plaintiff Jose Angel Miranda Lopez** worked for Defendants as a car wash attendant and general car wash employee and driver from in or around December 2018 through in or around the first week of May 2021 (the "Miranda Lopez Employment Period").

124.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez primarily worked at the 57th Street and 60th Street Locations. From in or around September 2020 to October 2020, Plaintiff Miranda Lopez worked at the West Nyack Location. In addition, on three (3) occasions, Plaintiff Miranda Lopez was instructed to travel to New Jersey to perform car washing and detailing at a car dealership with Defendants' mobile car-wash van.

125.    Plaintiff Miranda Lopez's car wash duties included washing and scrubbing vehicles, shampooing and vacuuming upholstery, polishing the interior and exterior of cars, cleaning windows and windshields, detailing, waxing, and cleaning tires. Plaintiff Miranda Lopez also performed cleaning, maintenance, organization, and inventory duties inside the car wash, as well as shoveling snow from the premises in the winter.

126.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez

typically worked six (6) days and frequently worked seven (7) days per week one (1) or more weeks per month.

127.    For approximately two (2) months between June 2020 and July 2020, Plaintiff Miranda Lopez was required to worked seven (7) days per week with no days off.

128.    From the beginning of the Miranda Lopez Employment Period to in or around September 2020, Plaintiff Miranda Lopez typically worked from approximately 8:30 am to approximately 6:00 pm. During the summer, from in or around June to September of each year, when the car wash was particularly busy, he frequently worked from approximately 8:00 am and as late as 9:00 pm. In total, Plaintiff Miranda Lopez worked at least fifty-seven (57) hours per week and sixty-six (66) hours per week when he worked seven (7) days per week; in the summer, Plaintiff Miranda Lopez typically worked between sixty-six (66) and eighty-seven (87) hours per week.

129.    From in or around September 2020 to in or around October 2020, when Plaintiff Miranda Lopez worked at the West Nyack Location, he was required to meet with coworkers at 7:00 am at the 60th Street Location, arrive at the West Nyack Location at 8:00 pm and work until 6:00 pm, and return to the 60th Street Location at approximately 7:00 pm. During this period, Plaintiff Miranda Lopez typically worked seventy-two (72) hours per week.

130.    Beginning in or around October 2020, Plaintiff Miranda Lopez returned to work at the 60th Street Location, where he worked his previous schedule. During this period, he typically worked from approximately 8:00 am and 8:30 am to approximately to 6:00 pm. On the days the business was not busy, especially during the last month of the Miranda Lopez Employment Period, he was sent home at around 5:00 pm. During this period, he worked on average fifty-seven (57) hours per week.

131.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez typically took a thirty (30) minute meal break, which he believes was deducted from his pay.

132.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez was paid his wages in cash with no paystub, wage statement or other document setting forth his hourly and overtime rates, total hours worked, and gross and/or net pay.

133.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez was paid an hourly rate. At the beginning of the Miranda Lopez Employment Period, Plaintiff Miranda Lopez was paid eleven dollars ($11.00) per hour. In 2019, Plaintiff Miranda Lopez was paid thirteen dollars and twenty-five cents ($13.25) per hour. From 2020 through the end of the Miranda Lopez Employment Period, Plaintiff Miranda Lopez was paid fifteen dollars ($15.00) per hour.

134.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez was paid at straight-time rates for all hours worked, including hours worked in excess of forty (40) per week, such that he did not receive overtime premiums of one and one-half (1.5) times his regular hourly rate.

135.    From the beginning of the Miranda Lopez Employment Period through 2019, Plaintiff Miranda Lopez's hourly rate fell below the correct statutory New York minimum wage. In addition, when Plaintiff Miranda Lopez worked at the West Nyack Location, he was not paid for approximately two (2) hours of travel time per day, such that during this period his effective hourly rate fell below the New York minimum wage.

136.    At no time was Plaintiff Miranda Lopez paid spread of hours premiums, consisting of one (1) extra hour's pay at minimum wage, on days when he worked in excess of ten (10) hours per day, which typically occurred when he worked at the West Nyack Location and during the summer.

137.    Throughout Miranda Lopez Employment Period, when Plaintiff Miranda Lopez received his wage payment, he was required to sign a document that showed his total wage payment and sometimes showed an approximation of his total hours worked, which was often incorrect. Frequently he was required to sign two (2) separate documents to receive his pay for a single workweek, which showed portions of his hours attributed to different Corporate Defendants.

138.    Throughout the Miranda Lopez Employment Period, Plaintiff Miranda Lopez frequently complained to Defendant Vargas and the manager at the 60th Street Location, "Alejandro," about the fact that he was often missing hours from his pay. On these occasions, Defendant Vargas typically dismissed his complaints or claimed that she would pay the hours during the following pay cycle, but at no time did Plaintiff Miranda Lopez receive his pay for the missing hours.

139.    At no time was Plaintiff Miranda Lopez provided with a wage notice setting forth the contact information of his employer, his regular hourly and overtime rates, his regular payday, any deductions or credits claimed by Defendants, or other information required by NYLL § 195(1)(a).

**Additional Classwide Allegations**

140.    At no time did Defendants provide Plaintiffs with a reliable means of tracking their worked, such as a sign-in sheet, timeclock, or other system. Plaintiffs believed that managers or other employees, such as Plaintiff Hernandez, wrote down an approximation of their hours worked. Plaintiff Hernandez received specific instructions from the Individual Defendant as to the manner in which he was required to record employees' hours worked to exclude travel time.

141.    At no time during the relevant time period did Plaintiffs receive any tips or gratuities. The vast majority of work that Plaintiffs performed, and the vast majority of

Defendants' business, was for car dealerships, not for the general public. Plaintiffs were not aware that there was any way for customers to leave tips or gratuities, either in cash or on credit card purchases.

142.    Throughout the relevant time period, Defendants' practice of paying a flat daily rate or straight-time rates to Plaintiffs resulted in Plaintiffs not receiving overtime premiums or spread of hours premiums.

143.    Throughout the relevant time period, Defendants typically paid Plaintiffs at or less than the correct statutory minimum wage. Defendants' policy of failing to pay travel time between the 60th Street Location and the West Nyack Location for employees resulted in most Plaintiffs who worked at the West Nyack Location being deprived of approximately twelve (12) or fourteen (14) hours of pay each week, thus further reducing their effective hourly rates.

144.    At no time during the relevant time period did Defendants provide Plaintiffs with any wage notice setting forth their regular hourly and overtime rates, payday, any deductions or credits claimed by Defendants in calculating their wages, employer contact information, or other information required by NYLL § 195(1)(a).

145.    At no time during the relevant time period did Defendants provide Plaintiffs with accurate wage statements with their weekly payment of wages setting forth their total hours worked, their hourly and overtime rates, their gross wages, or other information required by NYLL § 195(3). Defendants either paid Plaintiffs entirely in cash, such that Plaintiffs received no wage statement or pay stub, or paid in a combination of check or cash, which resulted in Plaintiffs receiving a paystub that showed substantially fewer hours than they actually worked.

146.    Plaintiffs were frequently required to sign one (1) or more documents when they received their wages, showing their total wages paid and sometimes an approximation of their

hours worked, which was often incorrect. Plaintiffs were often required to sign multiple documents that credited their hours worked to two (2) or more Corporate Defendants, such that these documents avoided attributing more than forty (40) hours in a workweek to a single Corporate Defendant.

147.    At times Plaintiffs complained to their managers and/or the Individual Defendant that the documents they signed showed fewer hours than they actually worked and asked why the documents showed that they worked for multiple corporations. In response, managers and/or the Individual Defendant dismissed Plaintiffs' complaints and told them that that was the way Defendants did business.

148.    Plaintiffs were aware that Defendants' failure to pay minimum wage, overtime premiums and spread of hours premiums and failure to provide wage notices and wage statements were corporate policies that applied to all non-management employees.

149.    Plaintiffs and the Collective Action and Class Members were all paid pursuant to the same corporate policies of Defendants, including failing to pay minimum wages, overtime premiums and spread of hours premiums.

150.    Plaintiffs have spoken with other employees of Defendants who similarly were typically paid below minimum wage for all hours worked. Defendants' failure to pay Plaintiffs minimum wages for all hours worked is a corporate policy of Defendants which applied to all Class Members throughout the Class Period.

151.    Plaintiffs have spoken with other employees of Defendants who likewise did not receive overtime premium compensation for hours worked in excess of forty (40) in a given workweek. Defendants' failure to pay Plaintiffs overtime compensation of one and one-half (1.5) times their regular hourly rate for hours over forty (40) each week is a corporate policy of

Defendants which applied to all employees throughout the relevant time period.

152.    Plaintiffs have spoken with other employees of Defendants who likewise did not receive spread of hours premiums for workdays that exceeded ten (10) hours. Defendants' failure to pay Plaintiffs spread of hours premiums is a corporate policy of Defendants which applied to all employees throughout the relevant time period.

153.    Defendants have not provided Plaintiffs or their other employees with wage notices at the time of hire or when their wage rates changed or with wage statements with their weekly payment of wages.

154.    Throughout the relevant time period and, upon information and belief, continuing until today, Defendants have likewise employed other individuals like Plaintiffs in positions that require little skill and no capital investment.  Upon information and belief, such individuals were required to work for less than minimum wage and were not paid time and one-half their regular rate when working in excess of forty (40) hours per week.

155.    Upon information and belief, throughout the relevant time period and continuing until today, Defendants failed to maintain accurate and sufficient time and payroll records or provide such records to employees.

## FIRST CAUSE OF ACTION
## FAIR LABOR STANDARDS ACT – UNPAID OVERTIME
### (Brought on Behalf of Plaintiffs and the Collective Action Members)

156.    Plaintiffs, on behalf of themselves and the Collective Action Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

157.    By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendants have violated

and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

158.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

159.    Defendants' failure to pay overtime caused Plaintiffs and the Collective Action Members to suffer loss of wages and interest thereon. Plaintiffs and the Collective Action Members are entitled to recover from Defendants their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

**SECOND CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID MINIMUM WAGE**
**(Brought on Behalf of Plaintiffs and the Class Members)**

160.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

161.    Defendants willfully violated Plaintiffs' and Class Members' rights by failing to pay minimum wage for all hours worked, in violation of the NYLL and regulations promulgated thereunder.

162.    Defendants' failure to pay minimum wage for all hours worked caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon. Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid minimum wages, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiffs and the Class Members)**

163.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

164.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

165.    Defendants' failure to pay overtime premium compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID SPREAD-OF-HOURS PREMIUMS**
**(Brought on Behalf of Plaintiffs and the Class Members)**

166.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

167.    Defendants willfully violated Plaintiffs' and the Class Members' rights by failing to pay compensation in an amount equal to one hour's pay at the relevant minimum wage in all instances where the Class Members worked either a split shift or more than ten (10) hours per day,

in violation of the NYLL §§ 650, *et seq.*, and the regulations promulgated thereunder including N.Y. Comp. Code R. & Regs. tit. 12, §§ 137-1.7 (2010), 146-1.6 (2012).

168.    Defendants' failure to pay spread-of-hours compensation caused Plaintiffs and the Class Members to suffer loss of wages and interest thereon.  Plaintiffs and the Class Members are entitled to recover from Defendants their unpaid spread-of-hours compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FIFTH CAUSE OF ACTION**
**<u>NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE NOTICES</u>**
**(Brought on Behalf of Plaintiffs and the Class Members)**

169.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

170.    Defendants have willfully failed to supply Plaintiffs and the Class Members notice as required by Article 6, § 195(1), in English or in the language identified by Plaintiffs and the Class Members as their primary language, containing Plaintiffs' and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay, if applicable; the regular pay day designated by the employer in accordance with the NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer' the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

171.    Due to Defendant's violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants fifty dollars ($50.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190, *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### SIXTH CAUSE OF ACTION
### NEW YORK LABOR LAW – FAILURE TO PROVIDE WAGE STATEMENTS
#### (Brought on Behalf of Plaintiffs and the Class Members)

172.    Plaintiffs, on behalf of themselves and the Class Members, repeat and reallege each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

173.    Defendants have willfully failed to supply Plaintiffs and Class Members with an accurate statement of wages as required by NYLL, Article 6, § 195(3), containing the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the number of hours worked, including overtime hours worked if applicable; deductions; and net wages.

174.    Due to Defendants' violations of the NYLL, Plaintiffs and the Class Members are entitled to recover from Defendants two hundred and fifty dollars ($250.00) per employee for each day that the violations occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per employee, as provided for by NYLL, Article 6, §§ 190 *et seq.*, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs, on behalf of themselves and all other similarly situated Collective Action Members and Class Members, respectfully request that this Court grant the following relief:

a.    Designation of this action as a collective action on behalf of the Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiffs and their counsel to represent the Collective Action Members;

b.    Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on behalf of the Class Members and appointing Plaintiffs and their counsel to represent the Class;

c.    An order tolling the statute of limitations;

d.    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

e.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.    An award of compensatory damages as a result of Defendants' failure to pay minimum wage and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendants' willful failure to pay minimum wages and overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  Fifty dollars ($50.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(1) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-b;

i.  Two hundred and fifty dollars ($250.00) per Plaintiff and each of the Class Members for each day that the violations of NYLL, Article 6 § 195(3) occurred or continue to occur, up to a maximum of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1)-d;

j.  An award of prejudgment and post-judgment interest;

k.  An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

l.  Such other and further relief as this Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.

Dated:  New York, New York
        March 2, 2022

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
pelton@peltongraham.com
Taylor B. Graham (TG 9607)
graham@peltongraham.com
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiffs and the putative*
*FLSA Collective and Class*

37

### Notice of Shareholder Liability for Services Rendered
### Pursuant to § 630 of the Business Corporation Law of New York

Pursuant to the provisions of § 630 of the Business Corporation Law of New York ("NYBCL"), the ten (10) largest shareholders of **CARPRO DETAILING, INC., PARK PLACE FINE DETAILING, INC., PARK PLACE FINE HAND CAR WASH INC.** and **THE DETAIL SHOP NYC, INC.,** are hereby notified that the plaintiffs in this matter, individually and on behalf of the putative FLSA collective and the Class they seek to represent, intend to enforce your personal liability, as the ten (10) largest shareholders of **CARPRO DETAILING, INC., PARK PLACE FINE DETAILING, INC., PARK PLACE FINE HAND CAR WASH INC.** and **THE DETAIL SHOP NYC, INC.,** and charge you with indebtedness of said corporations to the plaintiffs for services performed for the corporations as employees during the six (6) year period preceding the filing of the complaint.

Services for the above-referenced corporations concluded for certain Plaintiffs within the past 180 days.

Dated:  March 2, 2022

Brent. E. Pelton, Esq.

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          _____
Signature                                                        Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por anticipado costas u honorarios profesionales de abogado. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en un juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) parte del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Gabriel Hdez
_____
Firma

Gabriel Hernandez
_____
Nombre Escrito

_This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above_

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Brian. A
_____
Signature

Brian. Alfaro
_____
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por anticipado costas u honorarios profesionales de abogado. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en un juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) parte del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Brian. A
_____
Firma

Brian. Alfaro
_____
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____
Signature

_Julio Elias Ibate par_
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por anticipado costas u honorarios profesionales de abogado. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en un juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) parte del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____
Firma

_Julio Elias Ibate par_
Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

_____          Wilson Valderrama Guit Vasquez
Signature                                                        Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como **demandante representativo** en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por anticipado costas u honorarios profesionales de abogado. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en un juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) parte del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

_____          Wilson Valderrama Guit Vasquez
Firma                                                              Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above

## CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc., and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me overtime wages and minimum wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being named as the representative plaintiff in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

Jose A. Miranda
Signature

Jose A Miranda.
Printed Name

## CONSENTIMIENTO PARA SER UN DEMANDANTE

Por mi firma abajo yo autorizo la presentación y tramitación de una acción legal en mi nombre y representación en contra de Park Place Fine Hand Car Wash Inc., The Detail Shop NYC Inc., Carpro Detailing Inc. y sus respectivos propietarios, gerentes, oficiales, directores, sucesores, predecesores, subsidiarias y afiliados para que me sean pagadas las horas extras y los salarios mínimos tal como lo requieren las normas estatales y/o federales e igualmente autorizo la presentación de este consentimiento en la acción(es) con el fin de debatir la conducta ilegal. Yo autorizo ser nombrado como demandante representativo en esta acción legal para tomar decisiones en nombre de otros demandantes a quienes pueda concernir el resultado de este proceso, el método y la manera en cómo debe llevarse a cabo este litigio y la decisión de llegar a un acuerdo dentro de la causa y todo lo que concierna a los honorarios profesionales y costas del proceso y cualesquiera otras decisiones relacionadas con este litigio. Yo entiendo que estaré representado por Pelton Graham LLC sin tener que pagar por anticipado costas u honorarios profesionales de abogado. Yo entiendo que, si los demandantes tienen éxito, los costos asumidos por los abogados en mi nombre serán deducidos inicialmente de la porción de mi acuerdo en una conciliación o como resultado de una sentencia en un juicio. Yo entiendo que mis abogados podrán solicitar a la Corte que les sean retribuidos los honorarios y costas procesales por parte de los demandados en nombre mío. Yo entiendo que los valores de retención de los abogados podrán ser ya sea el monto recibido por parte de los demandados o el monto aproximado de 1/3 (33.33%) parte del total del acuerdo de conciliación o del valor obtenido a través de la sentencia (incluyendo honorarios), cual sea la suma más alta.

Firma

Nombre Escrito

This is a complete and accurate translation of the English "Consent to Become a Party Plaintiff" form above